# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RODNEY E. DELAWDER,

               Petitioner,     :     Case No. 1:16-cv-743

  - vs -                              District Judge Michael R. Barrett
                                     Magistrate Judge Michael R. Merz

Warden,
  Ross Correctional Institution

                                               :

               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pro se by Petitioner Rodney Delawder, is before the Court for adjudication on the Amended Petition (ECF No. 21), the State Court Record (ECF No. 22), the Return of Writ (ECF No. 23), and Petitioner's Reply (ECF No. 24) and Information to the Court (ECF No. 25). The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division (ECF No. 26).

**Procedural History**

On February 16, 2013, Petitioner was indicted by the Lawrence County grand jury on charges of murder with a firearm specification, improperly discharging a firearm into a habitation, and felonious assault. The case was tried to a jury after Petitioner's motion to

1

suppress was denied, and he was convicted on all counts and sentenced to an aggregate term of twenty-two years to life imprisonment. He appealed to the Fourth District Court of Appeals which affirmed the trial court's judgment. *State v. Delawder,* 2015-Ohio-1857, 2015 Ohio App. LEXIS 1774 (4th Dist. May 12, 2015), appellate jurisdiction declined, 143 Ohio St. 3d 1448 (2015). Delawder filed his Petition for habeas corpus in this Court on July 10, 2016, and later amended it with court permission. His Amended Petition pleads the following grounds for relief:

> **Ground One:** Trial court committed reversible error in denying motion to suppress DNA testing by allowing the State to present evidence of defendant's DNA on the shotgun shell, when the State incorrectly advised counsel that the DNA was contaminated and not tested, when it in fact was preserved but not tested by the State until day four of the trial.
>
> **Supporting Facts:** The trial court denied a motion to suppress evidence of DNA taken from a shotgun shell, where said DNA was not produced by the State until day four of the trial, and the State had previously lied to defense counsel and stated that the DNA was not tested because the shell was contaminated. Not only does this give rise to a right to suppress, but also is indicative of clear evidence that the DNA results ultimately used to obtain conviction was in fact "contaminated" and thus inadmissible, and accordingly, petitioner Delawder has not been proven guilty of all elements of the offense beyond a reasonable doubt.
>
> **Ground Two:** Trial counsel's refusal to call expert witnesses and character witnesses, amounted to ineffectiveness to the extent to deprivation of the right to a fair trial.
>
> **Supporting Facts:** The defense counsel was deficient in failing to call an expert, in light of the above Ground One. Because an expert could have actually re-examined the DNA of the shotgun shell, and make the finding that prosecutions claims all along (until day four of trial) that the shell was "contaminated", was actually the correct conclusion, and therefore, it is inadmissible and said conviction cannot stand as a matter of law. It was further ineffectiveness to fail to call character witnesses for petitioner, which could have attested to character of Delawder which is contrary to that of a murderer. This was a [jury]-trial, and the jurors were presented with "contaminated" evidence, and said jurors did not even know about the contamination, all due to ineffective counsel at trial.

2

(Amended Petition, ECF No. 21, PageID 570, 572.)

**Petitioner's Objections to Consideration of the Return of Writ**

1. **It was untimely filed.**

Petitioner makes no substantive response to the Return. Instead he argues the Court should ignore the Return because it was filed late and the law of the case doctrine bars the arguments made in the Return (ECF No. 24).

Petitioner's calculation that the Return was filed late is based on his belief that the time for its filing is controlled by 28 U.S.C. § 2243. The time limits set in that statute are adjustable by the Court. When she initially ordered the State to answer, Magistrate Judge Bowman gave the State sixty days from July 15, 2016, to do so (Order, ECF No. 4, PageID 206). In lieu of an answer, the State initially filed, within the time Judge Bowman had allowed and then extended, a Motion to Dismiss (ECF No. 11). Because a motion to dismiss is a dispositive motion on which a Magistrate Judge may not make a final ruling in the absence of consent of the parties, that Motion was not finally disposed of until August 21, 2017 (ECF No. 20). The Amended Petition contains a Certificate of Service that it was mailed June 23, 2017 (ECF No. 21, PageID 581), and a notation that it was scanned at the prison on June 26, 2017, and received by the Clerk of Court on July 5, 2017, id. at PageID 565. However, it could not be formally filed until Judge Barrett had granted permission for the filing, which occurred on August 21, 2017. Neither Judge Barrett nor Judge Bowman set a new date for a return of writ, nor had Petitioner asked the Court to set a new date. The Return was actually filed November 3, 2017, seventy-four days after the

Amended Petition was formally docketed. Since there was no set deadline, the Return was not untimely filed.

Petitioner relies on *Curtis v. Perini*, 301 F. Supp. 444 (N. D. Ohio 1968), aff'd, 413 F.2d 546 (6th Cir. 1969). In that case Judge Young refused to consider a return of writ that was filed several days late. This did not result in an issuance of the writ, however; Curtis's petition was dismissed. Petitioner relies on *Cristini v. McKee*, 526 F.3d 888 (6th Cir. 2008), and *Dickens v. Jones*, 203 F. Supp. 2d 354 (E.D. Mich. 2002), for the proposition that any well-pleaded allegations in a habeas petition not timely opposed must be deemed admitted. Neither case stands for that proposition.

Petitioner asserts the Motion to Dismiss was improper in lieu of an answer because the Court had not ordered it. The Rules Governing § 2254 Cases do not preclude motions to dismiss raising affirmative defenses, and this Court regularly entertains such motions, even in capital cases. Unlike a civil defendant, the respondent in a habeas case does not get notice of the Petition until the Court issue an order for answer or to show cause, so respondents have no occasion until then to raise defenses which may dispose of the case.

### 2. It is Barred by the Law of the Case Doctrine

Petitioner next argues that Respondent's arguments in the Return of Writ are barred by the law of the case doctrine because they were not previously raised in the Motion to Dismiss (Reply, ECF No. 24, PageID 1290).

Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation. *United States v. Moored*, 38

F.3d 1419, 1421 (6th Cir. 1994), *citing United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993). "As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *citing* 1B Moore's Federal Practice ¶0.404 (1982); *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006); *United States v. City of Detroit*, 401 F.3d 448, 452 (6th Cir. 2005). "If it is important for courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016)(Sutton, J.), *quoting* Bryan A. Garner, et al., The Law of Judicial Precedent 441 (2016).

Petitioner's argument misapplies the law of the case doctrine. Under law of the case, earlier judicial decisions in a case are settled law for later stages of the same case. If this Court had decided earlier that Respondent's arguments for dismissal were mistaken, the doctrine would apply to attempted resurrection later of the same arguments. Law of the case does not act to bar consideration of arguments not made at an earlier stage of the case, so long as they are properly raised later.

Even if the Court has decided a legal issue, parties are free to seek reconsideration and that often happens in habeas corpus cases, particularly those challenging a death sentence.

In sum, the Court is required to consider the substance of Respondent's Return.

# Analysis

**Ground One: Failure to Suppress DNA Evidence**

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In the Return of Writ, Respondent argues that a claim of error in admission of DNA evidence, as made in the First Ground for Relief, is a question of state law which is not cognizable in federal habeas corpus (ECF No. 23, PageID 1275-78). To the extent the First Ground raises a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), Respondent asserts the Fourth District's decision is not an objectively unreasonable application of *Brady* and its progeny. *Id.* at PageID 1278-84.

The victim in this case, John McKnight, was shot with a shotgun and later died. Police recovered the shotgun and sent it to the Ohio Bureau of Criminal Investigation (BCI) for DNA testing.

> **[*P5]** In discovery the state provided Delawder with copies of reports from the Bureau of Criminal Investigation ("BCI") indicating that: 1) a forensic scientist had swabbed the trigger and trigger guard, stock, hammer, barrel latch, and shell casing from the single-barrel 12-gauge shotgun submitted to BCI for testing; 2) everything was tested for DNA except for the shell casing; and 3) all the DNA tested on the shotgun matched Delawder's DNA. Delawder's trial counsel then contacted Sgt. Aaron Bollinger, the lead detective of the Lawrence County Sheriff's Office, who advised him that any DNA evidence from the fired shell had been contaminated by BCI personnel and could not be tested by either party.

**[*P6]** Delawder filed a motion to suppress the state's use or reference to any DNA evidence at trial based in part on Sgt. Bollinger's representation that any DNA evidence from the expended shell had been contaminated by BCI and could not be tested. At the hearing on the suppression motion, Delawder's trial counsel conceded there was no "allegation of bad faith" on the part of the state in destroying any DNA evidence on the fired shotgun shell. The trial court denied the motion.

* * *

**[*P15]** Sara Smith, a forensic scientist in the DNA section of BCI, testified that she received the shotgun for testing and swabbed the trigger, trigger guard, stock, hammer, barrel latch, and fired shell casing for possible DNA. She performed testing on all of the areas swabbed except for the spent shell casing. She testified that she did not test the swab of the shell casing because shell casings are small so the amount of DNA that may be present would be so minimal as to not be as useful as swabs of other areas of the gun. Smith further testified that the act of firing a shell destroys the DNA so that the chance of it being on the fired shell is "slim to none." Smith has performed thousands of DNA tests and she could not recall anyone getting a DNA profile from a fired shell. All of the other tested areas of the shotgun matched Delawder's DNA.

**[*P16]** When Smith testified on cross-examination that the swab taken of the fired shotgun shell could still be tested for DNA, Delawder's trial counsel requested that the trial court order BCI to test it and the state agreed. The state then rested its case, and Delawder renewed his motion to suppress the state's DNA evidence. In light of Smith's testimony that the shell had been swabbed, but not tested, Delawder's trial counsel argued that his trial strategy had been prejudiced by Sgt. Bollinger's erroneous representation that the shotgun shell could not be tested because of contamination. Delawder's counsel acknowledged that this evidence had been withheld from the defense "through inadvertence I'm sure." Sgt. Bollinger noted that his erroneous statement to Delawder's trial counsel was based on his conversation with an employee in the BCI firearms section, who advised him that she had handled the items and that DNA testing could no longer be done; unbeknownst to this employee, however, the DNA section had already swabbed the gun and shell. The trial court denied Delawder's renewed motion to suppress. Later, Smith tested the swab of the spent gunshot shell, but found no DNA on it.

*Delawder*, 2015 Ohio App. LEXIS at 15-16, ¶¶ 5-6.

There is no federal constitutional right to have evidence "suppressed," although there is a constitutional right not to be convicted on evidence that has been unconstitutionally obtained. *Mapp v. Ohio*, 367 U.S. 643 (1961). The Ohio courts have used the motion to suppress to decide pre-trial on the admissibility of scientific evidence and to consider Fourth Amendment objections to evidence outside the presence of the jury. Thus to the extent Mr. Delawder is arguing that the Fourth District Court of Appeals was in error in not reversing the trial court because it did not "suppress" the DNA evidence, that is a question of Ohio evidentiary law which this Court cannot re-examine.

Delawder also claims that the State withheld material exculpatory evidence from him. This states a federal constitutional claim under *Brady v. Maryland, supra.* The Fourth District considered this claim as part of its decision of Delawder's First Assignment of Error. It held as follows:

> **[\*P21]** In essence Delawder claims that the state improperly withheld discovery of material exculpatory evidence in the form of the untested swab of the fired shotgun shell. "'Whether evidence is materially exculpatory is a question of law.'" *State v. Campbell*, 4th Dist. Adams No. 13CA969, 2014-Ohio-3860, ¶ 10, quoting *State v. Fox*, 2012-Ohio-4805, 985 N.E.2d 532, ¶ 28 (4th Dist.).
>
> **[\*P22]** "Due process requires that the prosecution provide defendants with any evidence that is favorable to them whenever that evidence is material either to their guilt or punishment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 30, citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This result is the same regardless of whether the state acted in good faith or bad faith. *Brady* at 87; *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 7.
>
> [\*P23] The dispositive issue is whether the withheld evidence—the fired shotgun shell that had been swabbed for DNA, but not tested

before trial—was materially exculpatory. "Evidence is considered material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Brown* at ¶ 40, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

[*P24] "The *Brady* test is stringent * * * [so] '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Rivas* at ¶ 14. Evidence is not materially exculpatory if "'no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Geeslin* at ¶ 9, quoting *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *see also State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 79; *Fox* at ¶ 25.

[*P25] According to the unrebutted testimony of BCI forensic scientist Smith, who had performed thousands of DNA tests and could not recall anyone obtaining a DNA profile from a fired shell, there was little or no chance that DNA remained on the fired shotgun shell. The mere possibility that the fired shell could still be tested for DNA thus did not establish that this evidence was materially exculpatory.

[*P26] Notably, Delawder cites no case authority on appeal in support of his claim that this inadvertently withheld evidence was materially exculpatory. *See Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 33 ( "It is within our discretion to disregard any assignment of error that fails to present any citations to cases or statutes in support"). Instead, his citation of authority in his initial brief is limited to a passing reference to Crim.R. 16(B), which we have determined to be inapplicable to the evidence in question because it was not materially exculpatory.

[*P27] Moreover, although the evidence that the spent shell had not been tested for DNA does not fall into the category of evidence that was lost or destroyed by the state, we are persuaded that cases addressing these circumstances are instructive. In these cases "[u]nless a defendant can show that the state acted in bad faith, the state's failure to preserve potentially useful evidence [as opposed to materially exculpatory evidence] does not violate a defendant's due

9

> process rights." *Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, at syllabus, citing *Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281; *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 77 ("*Youngblood* made a clear distinction between materially exculpatory evidence and potentially useful evidence"). We already found the withheld evidence did not constitute materially exculpatory evidence so, at best, it was potentially useful. But as Delawder's trial counsel conceded and the evidence at trial established, the state's erroneous statement to him that the shell could not be tested was not made in bad faith, but instead was based on a mistaken statement by a BCI employee from the firearms section who did not know that the DNA section had already swabbed the shell. Therefore, the state's inadvertent withholding of the evidence from Delawder did not violate his right to due process.
>
> [*P28] In addition once the misstatement was discovered during the cross-examination of the BCI forensic scientist, the state agreed to and did test the swab of the fired shotgun shell. The result of the test—finding no DNA on the shell—confirmed the forensic scientist's testimony that there was little or no chance of recovering DNA from a fired shell.

*Delawder*, 2015 Ohio App. LEXIS, ¶¶ 21-28.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Delawder's burden, then, is to show this was an objectively unreasonable application of *Brady*; he has not done so. The fact that the shell swab was available to be tested was not disclosed until the fourth day of trial, but then it was tested and returned no results, just as Ms. Smith said had been the case with thousands of other spent shells she had tested. Delawder's

counsel was still free to argue that his DNA did not appear on the shell, but Ms. Smith's testimony about shells in general would have reduced that fact to insignificance, especially in light of the fact that Delawder's DNA was on every other part of the shotgun that was tested.

Delawder's claim under *Brady* is without merit. The First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two: Ineffective Assistance of Counsel**

In his Second Ground for Relief, Petitioner asserts his trial counsel provided ineffective assistance when he failed to call a DNA expert who could have testified that the spent shell was contaminated and failed to call character witnesses. As to Ground Two, Respondent asserts the Fourth District's decision is not an objectively unreasonable application of the Supreme Court law applicable to this claim, *Strickland v. Washington,* 466 U.S. 668 (1984).

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, *supra*.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id*. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The Fourth District also considered Delawder's ineffective assistance of trial counsel claim and wrote as follows:

> B. Ineffective Assistance of Counsel
>
> [*P31] In his second assignment of error Delawder asserts that his trial counsel's failure to call expert and character witnesses constituted ineffective assistance of counsel.
>
> [*P32] To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of

12

reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, 2014 WL 346691, ¶ 23. The defendant bears the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 23. Failure to establish either part of the test is fatal to an ineffective-assistance claim. *Strickland* at 697, 104 S.Ct. 2052; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

[*P33] First Delawder claims that he requested that his trial counsel retain a firearm and a DNA expert [**17] and that the DNA expert testify on his behalf at trial. However, as the state notes[,] his trial counsel's motion for approval of payment of appointed counsel fees and expenses proves that counsel did retain firearms and DNA experts who assisted counsel in the defense of the criminal case. (OP76) For example, the motion notes that the DNA expert reviewed the case file and helped trial counsel prepare questions for cross-examination of the state's DNA witness. (*Id.*)

[*P34] Moreover, "'counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Pickens*, 141 Ohio St. 3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 203, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 2001 Ohio 4, 739 N.E.2d 749 (2001). "Because calling witnesses is within the realm of trial tactics, defense counsel did not have a duty to call an expert witness." *State v. Goza*, 8th Dist. Cuyahoga No. 89032, 2007-Ohio-6837, ¶ 58.

[*P35] Delawder also argues that his trial counsel was ineffective for failing to call character witnesses who could have rebutted the evidence concerning his alleged violent nature when drinking alcohol. Again, we will not second-guess counsel's decision whether to call witnesses because "[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available." *State v. Albert*, 10th Dist. Franklin No. 14AP-30, 2015-Ohio-249, ¶ 40, citing *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995 Ohio 171, 656 N.E.2d 643 (1995). Because Delawder's own wife and sister testified about his drinking and violent behavior on the date in question and his sister testified about his history of violent

> behavior when drinking, counsel could have reasonably determined that no character witnesses would have credibly testified in rebuttal. Delawder's claim on appeal that he "advised his trial counsel of several character witnesses that he wanted called on his behalf at trial" is not supported by the record and we cannot speculate about testimony that was not presented or proffered at trial. See [State v. Maxwell](#), 139 Ohio St. 3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 179, quoting [State v. Ishmail](#), 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("'[a] reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter'"); [State v. Hibbler](#), 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, ¶ 30 ("Absent evidence in the record indicating that positive character witnesses were willing and able to testify, we cannot say that trial counsel provided deficient representation by failing to call them").

*Delawder, supra*, ¶¶31-35. Petitioner has failed to show that this decision is an objectively unreasonable application of *Strickland*. Therefore the Second Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore Petitioner should not be permitted to proceed *in forma pauperis*.

January 19, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).